# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70012

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2016

Lyle W. Cayce
Clerk

TRAVIS TREVINO RUNNELS,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:12-CV-74

Before GRAVES, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:*

      Travis Trevino Runnels was convicted of capital murder and sentenced to death. He seeks a certificate of appealability (COA) from the district court's denial of his petition for writ of habeas corpus. Because reasonable jurists would not find that the district court's assessment of his ineffective assistance of counsel claims is debatable or wrong, we deny his application.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70012

## BACKGROUND

Runnels was charged with the 2003 murder of Stanley Wiley, a civilian supervisor at the Texas Department of Criminal Justice's (TDCJ) Clements Unit boot factory. During his work shift as a janitor at the boot factory, Runnels approached Wiley from behind, pulled his head back, and slit his throat. Wiley later died from the injury. The Texas Court of Criminal Appeals ("CCA") summarizes the facts of the case:

> Appellant did not enjoy working as a janitor at the prison boot factory. On the morning of the day of the murder, he expressed anger at the fact that he had not been transferred to being a barber as he had requested. He told fellow inmate Bud Williams that he was going to be "shipped one way or another" and that "he was going to kill someone." Appellant said that he would kill Wiley if Wiley said anything to him that morning. Appellant told another inmate, William Gilchrist, that he planned to hold the boot-factory plant manager hostage in the office after the other correctional officers had left. Finally, after appellant had arrived at the boot factory, he told fellow inmate Phillip Yow that he was going to do something.
>
> During the first shift at the boot factory, Appellant approached Wiley, raised a knife, tilted Wiley's head back, and cut his throat. Appellant then wiped the knife with a white rag and walked back toward the trimming tables. When Yow later asked appellant why he had attacked Wiley, appellant said, "It could have been any offender or inmate, you know, as long as they was white." In response to Yow's explanation that appellant could get the death penalty if Wiley died, appellant responded, "[a] dead man can't talk."
>
> Wiley did die from the injury. It was later determined that the cut was a twenty-three centimeter long neck wound that transected the external carotid artery and the internal jugular vein and extended in depth to the spine. A medical examiner found that the force required to inflict the wound was "moderate to severe." Appellant was twenty-six years old when he committed the offense.

No. 16-70012

*Runnels v. State*, 2007 WL 2655682, at *1 (Tex. Crim. App. Sept. 12, 2007).

The record shows that Runnels had been convicted of three other felonies before murdering Wiley. In 1993, he had been convicted of second-degree felony burglary. After being placed on probation, he committed (and was convicted for) another burglary resulting in the revocation of his probation. In 1997, he was convicted of first-degree felony aggravated robbery committed with a firearm. In prison, Runnels committed numerous acts of misconduct including: (1) hitting a guard in the jaw; (2) throwing urine at a guard; (3) and throwing feces at a guard.

Though the State Counsel for Offenders was initially appointed to represent Runnels for murdering Wiley, the trial judge granted their motion to withdraw on grounds that they lacked experience and training in death penalty litigation. On May 17, 2004, Jim Durham and Laura Hamilton were appointed as Runnels' defense counsel. In addition, the court appointed defense investigator, Kathy Garrison; psychiatrist, Lisa Clayton; neuro-psychologist, Richard Fulbright; and attorney, Warren Clark, who acted as capital jury selection consultant. Attorney Robert Hirschhorn helped to prepare the defense's juror questionnaire.

At trial, Runnels entered a guilty plea. He also provided the trial judge with an affidavit stating that he had discussed the strategic and tactical aspects of his guilty plea with counsel and that he voluntarily entered into his guilty plea. On the day of trial, potential defense witnesses including Runnels' mother, father, grandmother, and brother Darmonica did not make themselves available to testify. Darmonica refused to make the trip to Amarillo. Runnels' mother, grandmother, and father made the trip, but Runnels' father remained in the courtroom, thus making himself unavailable to testify. Runnels' mother and grandmother left the courthouse and drove home before they could testify.

No. 16-70012

When Garrison called the family members who had left, they told her that they could do nothing for Runnels now and hung up the telephone.

With no defense witnesses present, defense counsel James Durham attempted to show that Runnels did not constitute a future danger by eliciting testimony from seven prosecution witnesses who had been in contact with Runnels on the day of the murder. These inmates testified that Runnels was a good and peaceable prisoner who had cooperated with officers after the attack. After the state rested, Durham informed the court that he had a witness who was teaching a class and who could not arrive until later that day. He had a witness whom he wanted to confer with counsel about. He also had subpoenaed additional out-of-town witnesses for the next day. When the judge asked if Durham could convince his witness who was teaching a class to come sooner, Durham said that he would inquire. After a short break, Durham rested without calling any defense witnesses. The next day, he moved for an instructed verdict on the issue of future dangerousness. The motion was denied.

During closing arguments, the prosecution stated that Runnels' actions demonstrated his future dangerousness despite testimony by the seven inmate witnesses to the contrary. The prosecution also emphasized Runnels' prior convictions, prison misconduct, and the brutal nature of the attack on Wiley. During his closing argument, defense counsel Durham stated that Runnels' decision to plead guilty was his "first act of contrition . . . ." He also reemphasized that the State had not carried its burden of proof of future dangerousness. In particular, he argued that the State had not put on any experts regarding Runnels' future dangerousness and that seven inmates had testified that Runnels was peaceful and non-violent. Finally, he pointed out that Runnels had had no major incidents in prison, and that he had never hurt

4

or hit anyone before the murder. On rebuttal, the prosecution argued against the need to present an expert on Runnels' future dangerousness.

After sentencing, Runnels filed a motion for a new trial. After an evidentiary hearing at which, inter alia, Mr. Durham testified, it was denied. His conviction was automatically appealed to the CCA, which unanimously confirmed his conviction and death sentence. Runnels' new counsel, Joe Marr Wilson, filed an application for habeas relief in state court. Runnels, through counsel Wilson, alleged that Durham had rendered ineffective assistance at trial for failing to present punishment-phase evidence and failing to conduct an adequate mitigation investigation. Runnels supported his application with affidavits from Runnels, his brother Darmonica, his mother, his grandmother, and two cousins. The affidavits stated, among other things, that: (1) Runnels mother and grandmother drove to Amarillo with Runnels' father for the trial, waited at the courthouse thinking they would testify, but were told either by defense investigator Kathy Garrison or Durham that they would not be needed, and went home; (2) Runnels' brother Darmonica was never served with a subpoena; (3) no one had ever interviewed Runnels' cousins before trial, but they would have cooperated if asked; (4) Durham had recommended Runnels plead guilty and told him that the "real fight would be in showing a jury at the punishment phase that [he] had a good side and that [he] could be rehabilitated;" and (5) Runnels had provided Garrison with the names of at least thirty family members and ten friends to serve as character witnesses and offer information about his upbringing and family history.

After making findings of fact, which summarized the defense's mitigation investigation and strategy, and conclusions of law, the trial judge recommended the denial of habeas relief, determining that Durham's decision not to present testimony was a sound strategy. The CCA held the application in abeyance and ordered the trial court to conduct an evidentiary hearing on

No. 16-70012

Runnels' ineffective-assistance of counsel claim and on a claim that his guilty plea was involuntarily. After a hearing during which the trial judge made supplemental findings of fact and conclusions of law, the judge once again recommended that habeas relief be denied. The CCA adopted the trial judge's recommendation including the initial and supplemental findings of fact and conclusions of law.

On December 28, 2012, Runnels filed a federal habeas petition in district court under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). On March 31, 2016, the district court adopted the United States Magistrate Judge's findings and, after considering and denying Runnel's objections to the same, denied Runnels' application for writ of habeas corpus and request for a COA. Runnels timely appeals and asks this Court to grant a COA.

## STANDARD OF REVIEW

Under the AEDPA, a prisoner who has been denied habeas relief by a district court must obtain a COA from a circuit or district judge. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-336 (2003). A COA is granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has denied claims on the merits, the petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where claims have been denied on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 474.

COA requests require a "threshold inquiry into whether the circuit court may entertain an appeal." *Miller-El*, 537 U.S. at 336 (quoting Slack, 529 U.S. at 482) (internal marks omitted). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 323. When assessing COA claims, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 325. "[I]n a death penalty case, 'any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (alteration in original) (quoting *Hernandez v. Johnson*, 2013 F.3d 243, 248 (5th Cir. 2000)).

A writ of habeas corpus shall not be granted for any claim that was adjudicated on the merits in state court "unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004) (internal marks omitted). "An unreasonable application may also occur if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* (internal marks omitted) (alternation in original). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting

No. 16-70012

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**DISCUSSION**

Runnels asserts that his trial counsel was ineffective on grounds that: (1) trial counsel did not retain a mitigation specialist; (2) trial counsel did not formulate a mitigation strategy based on information discovered by defense investigator Kathy Garrison that Runnels had endured a "chaotic and traumatic childhood;" and (3) trial counsel did not call any witnesses.

Ineffective assistance of counsel claims are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). According to *Strickland*, Runnels must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) that he was prejudiced by the representation. Prejudice is defined as a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 688, 694 (1984). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

Consequently, for his application to be granted, Runnels must demonstrate that it was unreasonable for the state court to conclude that he did not overcome the strong presumption of defense counsel's competence and that he failed to undermine confidence in the outcome. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). He must also demonstrate that the state court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d).

No. 16-70012

Here, Runnels fails to show an unreasonable application of *Stickland*. The Magistrate Judge's 64-page recommendation thoroughly analyzes Runnels arguments and finds the following: First, defense counsel conducted an extensive mitigation investigation. In fact, Runnels concedes that Garrison "conducted a thorough investigation into [his] background." He claims, however, that defense should have retained a qualified mitigation investigator. This Court has previously stated that defense counsel is not obligated to retain a mitigation expert. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) ("That trial counsel decided to use its time and resources on mental-health experts, rather than on a professional mitigation specialist . . . may very well reflect counsel's reasonable strategic decision 'to balance limited resources' . . . ."). In addition, there is nothing in the record to support a conclusion that defense counsel's decision not to retain a mitigation investigator was unreasonable. As the district court noted, "Ms. Garrison has significant experience in death penalty cases. . . ." Also, defense counsel retained a team of specialists to assist in Runnels' defense including Garrison, a psychiatrist, and a neuro-psychologist.

Second, defense counsel formulated an adequate mitigation strategy. As *Strickland*, 466 U.S. at 690, makes clear, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." There is nothing in the record to overcome this strong presumption. As the district court stated, after "receiving unhelpful reports from his experts," Durham "intended to present evidence that Runnels had had a rough life, was poor, was shuffled back and forth between parents and grandparents and other family members, had trouble in school and suffered disabilities that made it difficult to function, but that he could serve a life sentence in prison." "Unfortunately for Runnels, there is uncontradicted testimony that petitioner's brother, Darmonica, simply refused

9

to appear at trial, and there is testimony that the rest of Runnels's family made themselves unavailable by exiting the courthouse and leaving Amarillo before they were called to testify. When Ms. Garrison called them and asked them to return, they told her they could not do anything for Runnels and hung up the phone."

Consequently, defense counsel formulated a mitigation strategy that Runnels would plead guilty to Wiley's murder and then contest that he posed a future danger through the cross-examination of prosecution witnesses. On cross-examination, Durham elicited testimony from seven of the prosecution's "guilt" witnesses that Runnels was peaceable, a good prisoner, and did not have a history of violence. Prosecution witness Bud Williams testified that Runnels was not violent and did not get into prison fights. William Gilchrist testified that he had never seen Runnels engage in violent acts. Jimmy Jordan testified that he had never seen Runnels fight or argue with anyone except for Wiley. Williams Elkins testified that Runnels "seemed like he was a great guy." Tony Irvine testified that Runnels had made no attempt to escape after attacking Wiley and waited for the authorities to come. Eugene Johnson testified that he had not heard that Runnels was a troublemaker. Phillip Yow testified that Runnels cooperated with officers after the attack.

During his closing argument, Durham stated that Runnels' decision to plead guilty was his "first act of contrition . . . ." Then he argued that the State had not carried its burden of proof regarding future dangerousness given the testimony presented by the seven inmate witnesses. Finally, he pointed out that Runnels had had no major incidents in prison and that he had never hurt or hit anyone before murdering Wiley.

Third, defense counsel was justified in not calling witnesses. "[O]ur scrutiny of counsel's performance is highly deferential. We must be particularly wary of arguments that essentially come down to a matter of

degrees . . . Those questions are even less susceptible to judicial second guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (citations omitted). In addition, "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Potential defense witnesses made themselves unavailable for trial even after defense investigator Garrison urged them to appear. Thus, Runnels has failed to show that these witnesses were "available to testify and would have done so. . . ." *Id.* at 538.

Furthermore, defense counsel had ample reason to rest without calling witnesses once Runnels' family members made themselves unavailable to testify. *See Pinholster*, 131 S. Ct. at 1407 (stating that a court is "required not simply to give [the] attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [Appellant's] counsel may have had for proceeding as they did" (citations omitted)). Given that the prosecution would have likely brought up that the family members had been unwilling to appear, defense counsel could have reasonably assumed that the family members' testimony would have been "double-edged." *See Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999) (find that "double-edged" evidence is "even less susceptible to judicial second-guessing" because it "essentially comes down to a matter of degrees").

Runnels claims that a member of the defense team told family members that they would not need to testify. The state court found otherwise, and that finding "shall be presumed to be correct" without "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). Runnels has presented no such evidence. Regarding any other witnesses that the defense may have

called, Runnels' arguments "essentially come down to a matter of degrees . . . [and] are even less susceptible to judicial second guessing." *Dowthitt*, 230 F.3d at 743 (citations omitted). Consequently, reasonable jurists would not find the district court's assessment of his ineffective assistance of counsel claims to be debatable or wrong.

Runnels' application for a COA is DENIED.