# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-70031

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2018

Lyle W. Cayce
Clerk

TRAVIS TREVINO RUNNELS,

> Petitioner-Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

> Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:12-CV-74

Before GRAVES, HIGGINSON, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge: *

Petitioner Travis Trevino Runnels was convicted of the capital murder of Stanley Wiley and sentenced to death. His direct appeal and state collateral proceedings were unsuccessful, as were his 28 U.S.C. § 2254 petition for writ of habeas corpus in federal district court and his attempt to appeal the district court's denial of his petition to this court. In lieu of filing a petition for rehearing of this court's decision denying him a certificate of appealability (COA) on

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

the denial of the petition, Runnels filed a motion in the district court under Federal Rule of Civil Procedure 60(b), seeking to vacate the denial. The district court ruled that the motion was, in reality, a second-or-successive habeas petition, and, in the alternative, that Runnels failed to make the requisite showing to justify Rule 60(b) relief. Runnels now applies for a COA to appeal that denial. For the reasons below, we deny the application.

## I

## A

The following recitation of facts is drawn from this panel's 2016 decision denying Runnel's COA application arising from the district court's denial of his habeas petition:

> Runnels was charged with the 2003 murder of Stanley Wiley, a civilian supervisor at the Texas Department of Criminal Justice's (TDCJ) Clements Unit boot factory. During his work shift as a janitor at the boot factory, Runnels approached Wiley from behind, pulled his head back, and slit his throat. Wiley later died from the injury. The Texas Court of Criminal Appeals ("CCA") summarizes the facts of the case:

>> Appellant did not enjoy working as a janitor at the prison boot factory. On the morning of the day of the murder, he expressed anger at the fact that he had not been transferred to being a barber as he had requested. He told fellow inmate Bud Williams that he was going to be "shipped one way or another" and that "he was going to kill someone." Appellant said that he would kill Wiley if Wiley said anything to him that morning. Appellant told another inmate, William Gilchrist, that he planned to hold the boot-factory plant manager hostage in the office after the other correctional officers had left. Finally, after appellant had arrived at the boot factory, he told fellow inmate Phillip Yow that he was going to do something.

>> During the first shift at the boot factory, Appellant approached Wiley, raised a knife, tilted Wiley's head back, and cut his throat. Appellant then wiped the knife with

a white rag and walked back toward the trimming ta-
bles. When Yow later asked appellant why he had at-
tacked Wiley, appellant said, "It could have been any
offender or inmate, you know, as long as they was white."
In response to Yow's explanation that appellant could
get the death penalty if Wiley died, appellant responded,
"[a] dead man can't talk."

Wiley did die from the injury. It was later determined
that the cut was a twenty-three centimeter long neck
wound that transected the external carotid artery and
the internal jugular vein and extended in depth to the
spine. A medical examiner found that the force required
to inflict the wound was "moderate to severe." Appellant
was twenty-six years old when he committed the offense.

*Runnels v. State*, 2007 WL 2655682, at *1 (Tex. Crim. App. Sept. 12,
2007).

The record shows that Runnels had been convicted of three other
felonies before murdering Wiley. In 1993, he had been convicted of
second-degree felony burglary. After being placed on probation, he
committed (and was convicted for) another burglary resulting in the
revocation of his probation. In 1997, he was convicted of first-degree
felony aggravated robbery committed with a firearm. In prison, Run-
nels committed numerous acts of misconduct including: (1) hitting
a guard in the jaw; (2) throwing urine at a guard; (3) and throwing
feces at a guard.

Though the State Counsel for Offenders was initially appointed to
represent Runnels for murdering Wiley, the trial judge granted
their motion to withdraw on grounds that they lacked experience
and training in death penalty litigation. On May 17, 2004, Jim
Durham and Laura Hamilton were appointed as Runnels' defense
counsel. In addition, the court appointed defense investigator, Kathy
Garrison; psychiatrist, Lisa Clayton; neuro-psychologist, Richard
Fulbright; and attorney, Warren Clark, who acted as capital jury
selection consultant. Attorney Robert Hirschhorn helped to prepare
the defense's juror questionnaire.

At trial, Runnels entered a guilty plea. He also provided the trial
judge with an affidavit stating that he had discussed the strategic
and tactical aspects of his guilty plea with counsel and that he vol-
untarily entered into his guilty plea. On the day of trial, potential
defense witnesses including Runnels' mother, father, grandmother,

and brother Darmonica did not make themselves available to testify. Darmonica refused to make the trip to Amarillo. Runnels' mother, grandmother, and father made the trip, but Runnels' father remained in the courtroom, thus making himself unavailable to testify. Runnels' mother and grandmother left the courthouse and drove home before they could testify. When Garrison called the family members who had left, they told her that they could do nothing for Runnels now and hung up the telephone.

With no defense witnesses present, defense counsel James Durham attempted to show that Runnels did not constitute a future danger by eliciting testimony from seven prosecution witnesses who had been in contact with Runnels on the day of the murder. These inmates testified that Runnels was a good and peaceable prisoner who had cooperated with officers after the attack. After the state rested, Durham informed the court that he had a witness who was teaching a class and who could not arrive until later that day. He had a witness whom he wanted to confer with counsel about. He also had subpoenaed additional out-of-town witnesses for the next day. When the judge asked if Durham could convince his witness who was teaching a class to come sooner, Durham said that he would inquire. After a short break, Durham rested without calling any defense witnesses. The next day, he moved for an instructed verdict on the issue of future dangerousness. The motion was denied.

During closing arguments, the prosecution stated that Runnels' actions demonstrated his future dangerousness despite testimony by the seven inmate witnesses to the contrary. The prosecution also emphasized Runnels' prior convictions, prison misconduct, and the brutal nature of the attack on Wiley. During his closing argument, defense counsel Durham stated that Runnels' decision to plead guilty was his "first act of contrition . . . ." He also reemphasized that the State had not carried its burden of proof of future dangerousness. In particular, he argued that the State had not put on any experts regarding Runnels' future dangerousness and that seven inmates had testified that Runnels was peaceful and non-violent. Finally, he pointed out that Runnels had had no major incidents in prison, and that he had never hurt or hit anyone before the murder. On rebuttal, the prosecution argued against the need to present an expert on Runnels' future dangerousness.

After sentencing, Runnels filed a motion for a new trial. After an evidentiary hearing at which, inter alia, Mr. Durham testified, it

was denied. His conviction was automatically appealed to the CCA, which unanimously confirmed his conviction and death sentence. Runnels' new counsel, Joe Marr Wilson, filed an application for habeas relief in state court. Runnels, through counsel Wilson, alleged that Durham had rendered ineffective assistance at trial for failing to present punishment-phase evidence and failing to conduct an adequate mitigation investigation. Runnels supported his application with affidavits from Runnels, his brother Darmonica, his mother, his grandmother, and two cousins. The affidavits stated, among other things, that: (1) Runnels mother and grandmother drove to Amarillo with Runnels' father for the trial, waited at the courthouse thinking they would testify, but were told either by defense investigator Kathy Garrison or Durham that they would not be needed, and went home; (2) Runnels' brother Darmonica was never served with a subpoena; (3) no one had ever interviewed Runnels' cousins before trial, but they would have cooperated if asked; (4) Durham had recommended Runnels plead guilty and told him that the "real fight would be in showing a jury at the punishment phase that [he] had a good side and that [he] could be rehabilitated;" and (5) Runnels had provided Garrison with the names of at least thirty family members and ten friends to serve as character witnesses and offer information about his upbringing and family history.

After making findings of fact, which summarized the defense's mitigation investigation and strategy, and conclusions of law, the trial judge recommended the denial of habeas relief, determining that Durham's decision not to present testimony was a sound strategy. The CCA held the application in abeyance and ordered the trial court to conduct an evidentiary hearing on Runnels' ineffective-assistance of counsel claim and on a claim that his guilty plea was involuntarily. After a hearing during which the trial judge made supplemental findings of fact and conclusions of law, the judge once again recommended that habeas relief be denied. The CCA adopted the trial judge's recommendation including the initial and supplemental findings of fact and conclusions of law.

*Runnels v. Davis*, 664 F. App'x 371, 372–74 (5th Cir. 2016) (per curiam).

**B**

In December 2012, Runnels filed a federal habeas petition in district court through then-appointed counsel, Donald Vernay. He raised ineffective assistance of counsel claims against Durham, the state trial counsel, and Wilson, the state

habeas counsel. Vernay contemporaneously filed a motion to suspend the proceedings pending the Supreme Court's decision in *Trevino v. Thaler*, 569 U.S. 413 (2013), but the district court denied the motion because the parties had not identified any procedurally defaulted claims in the petition. After the Respondent filed an Answer alleging that a portion of Runnels's IATC claim was defaulted, the district court asked for supplemental briefing on *Trevino* and *Martinez v. Ryan*, 566 U.S. 1 (2012).

Upon review, the court held that the IATC claim was entirely exhausted. The allegedly unexhausted portion of the IATC claim—based on the failure to obtain more psychological testing—did not fall under the *Martinez* exception because the supporting affidavit was insufficient to show state habeas counsel should have pursued psychological testing, and the court declined to extend *Martinez* to allow relitigation of a claim that had been denied on the merits in state court. The court alternatively held that Wilson was not ineffective for failing to obtain a psychological examination and failing to present live testimony. The court deferred to the state court ruling, denied the habeas petition, and denied a COA. *See Runnels v. Stephens*, No. 12-0074, 2016 WL 1275654 (N.D. Tex. Mar. 31, 2016). Runnels timely filed an application for a COA in this court, which we denied. *See generally Runnels*, 664 F. App'x 371.

After the COA application was filed but before it was adjudicated, Vernay filed a motion to withdraw as counsel, which the panel granted. *See* Order, *Runnels v. Davis*, No. 16-70012 (5th Cir. Nov. 17, 2016). The court appointed Janet Gilger-VanderZanden and Mark Pickett as counsel in Vernay's place. These counsel, who currently represent Runnels, obtained an extension of time for filing a petition for rehearing, but later filed a motion to stay the proceedings to allow Runnels to file a motion in district court for relief from judgment. The panel granted the motion.

**C**

Runnels filed the instant Rule 60(b) motion seeking relief from judgment in June 2017. The motion raises two principal arguments. The first is based on a neuropsychological evaluation administered at the request of counsel by Dr. John Fabian, which revealed that Runnels suffers from ADHD, PTSD, frontal lobe damage, and a language-based learning disability. Runnels claims that the mental illness diagnoses are "intertwined with severe personal, financial, and familial hardships [he] faced during his childhood, all providing a significant case in mitigation that was unknown to the jury as well as every subsequent appellate court." He argued that this evidence "places his claim in a 'significantly different legal posture' from what was presented in state court," *i.e.*, that the claim is unexhausted.

The second ground involves a claim that Vernay's performance as federal habeas counsel constituted abandonment—that Vernay, in response to the district court's request for *Martinez* briefing, allegedly filed a sparse brief which mostly recounted procedural history and the decision in *Martinez*, and that, instead of presenting a new claim for relief, he allegedly rehashed an ineffective assistance claim that he had already presented as a non-defaulted claim in his original habeas petition. Runnels alleges that Vernay did not request funding from the district court for an investigator, mitigation specialist, or mental health expert. Furthermore, according to Runnels, Vernay's poor performance continued after the district court denied the initial habeas petition: Vernay's brief accompanying the first application for COA, Runnels claims, contained boilerplate language and incomplete arguments.

Runnels also cites as proof of abandonment the fact that this court eventually removed Vernay from the Criminal Justice Act attorney roster. In October 2016, the court issued an Order to Show Cause to Vernay, stating that his "recent performance in cases to which he has been appointed raises concerns about

his fitness to represent indigent defendants under the CJA." The Order to Show Cause specifically referenced Runnels's case, stating that "the poor quality of the briefing submitted cast serious doubt upon his suitability to continue to represent indigent defendants in capital cases." Vernay did not respond to the Order, and he was removed from the roster.

On the basis of these facts, Runnels requested that the district court grant him relief from judgment that would allow him to reopen habeas proceedings and investigate and present claims for relief under the exception supplied by *Martinez*. The magistrate judge recommended that the district court find that the Rule 60(b) motion is, in reality, a second-or-successive habeas petition, and that Vernay's representation did not create structural error. The district court adopted the magistrate judge's report. It rejected as belied by the record Runnels's argument that Vernay "failed to perform at all" with respect to the IATC claim, noting that, while at the time the petition was filed, *Martinez* did not apply to Texas inmates, Vernay "correctly anticipated the favorable outcome in *Trevino* . . . and raised a colorable IATC claim using the *Martinez* exception to procedural bar" and supporting it with new evidence. The court explained that he had also moved for leave to amend or supplement the petition once *Trevino* issued. The court next found that if Runnels was correct that the presentation of Dr. Fabian's report was sufficient to fundamentally alter the claim previously presented, "then by his own admission, he is raising a new claim that was not presented in a prior application." In short, the court concluded that Runnels's motion raised either (1) a new, unexhausted claim of ineffective assistance of trial counsel, or (2) the same claim that was deemed exhausted and decided against him on the merits under § 2254(d). The court ruled that the motion was a second or successive petition and transferred it to this court. In the alternative, the court denied the motion, concluding that Runnels did not present evidence justifying equitable relief under Rule 60(b).

Runnels now applies for a certificate of appealability, seeking to appeal the district court's ruling on the Rule 60(b) motion.

## II

Federal habeas proceedings are subject to the rules prescribed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015); *see* 28 U.S.C. § 2254. Under AEDPA, a certificate of appealability is a jurisdictional prerequisite to appealing the denial of habeas relief. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). A COA may issue upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). At the COA stage, we limit our examination "to a threshold inquiry into the underlying merits of the claims, and ask only if the District Court's decision was debatable." *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017); *see also Buck v. Davis*, 580 U.S. —, —, 137 S. Ct. 759, 773 (2017) ("[T]he only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). "When . . . the district court denies relief on procedural grounds, the petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Whatever the basis for the denial, the court must bear in mind that "[w]here the petitioner faces the death penalty, 'any doubts as to whether a COA should issue must be resolved' in the petitioner's favor.'" *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015) (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)), *abrogated on other grounds by Ayestas v. Davis*, 584 U.S. —, 138 S. Ct. 1080 (2018).

### III

We need not concern ourselves with Runnels's claim of abandonment by his previous habeas counsel, because we conclude that it is beyond debate that Runnels's Rule 60(b) motion is, in fact, a second-or-successive habeas petition.

Federal Rule of Civil Procedure 60(b)(6) allows a district court to grant relief "from a final judgment, order or proceeding" for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b). To succeed on a Rule 60(b) motion, the movant must show (1) that the motion was made within a reasonable time, and (2) extraordinary circumstances exist that justify the reopening of a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). We review de novo the district court's construction of the Rule 60(b) motion as a successive habeas petition. *Coleman v. Stephens* (*In re Coleman*), 768 F.3d 367, 371 (5th Cir. 2014).

"[T]o bring a proper Rule 60(b) claim" in a habeas proceeding, "a movant must show 'a non-merits-based defect in the district court's earlier decision on the federal habeas petition.'" *Edwards v. Davis* (*In re Edwards*), 865 F.3d 197, 204 (5th Cir.) (per curiam) (quoting *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)), *cert. denied*, 580 U.S. —, 137 S. Ct. 909 (2017). "Because of the comparative leniency of Rule 60(b), petitioners sometimes attempt to file what are in fact second-or-successive habeas applications under the guise of Rule 60(b) motions." *Id.* at 203. Given that tendency, we must determine whether such a motion either: "(1) presents a new habeas ***claim*** (an 'asserted basis for relief from a state court's judgment of conviction'), or (2) 'attacks the federal court's previous resolution of a claim ***on the merits***.'" *Id.* (quoting *Gonzalez*, 545 U.S. at 530). If the motion does either, then it must be treated as a successive habeas petition and subjected to AEDPA's limitation on those petitions. *Id.* A federal court resolves a claim on the merits by determining that the petitioner is not entitled to habeas relief on the claim under §§ 2254(a) and (d), "as opposed to

when a petitioner alleges 'that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'" *Id.* (quoting *Gonzalez*, 545 U.S. at 532 n.4). A Rule 60(b) motion that alleges omissions on the part of federal habeas counsel "ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Id.* (citation omitted).

Our decision in *In re Coleman* guides us here. There, the petitioner filed a Rule 60(b) motion, arguing in favor of finding a defect in the integrity of her original habeas petition because additional evidence from several witnesses on a particular claim had recently been discovered—evidence which was unavailable to the court when it decided the claim previously. The petitioner argued that her counsel's failure to discover and present this evidence rose to a level of constitutionally ineffective assistance that would justify relief from judgment. *In re Coleman*, 768 F.3d at 371–72. We found that such a claim "is fundamentally substantive—she argues that the presence of new facts would have changed this court's original result." *Id.* at 372. An argument that the petitioner's own counsel was ineffective in failing to present that evidence, we held, "sounds in substance, not procedure." *Id.*; *see also id.* at 372 n.17 ("A motion that asks the district court for an opportunity to offer facts that (in the petitioner's view) will prove that his conviction was constitutionally infirm raises a paradigmatic habeas claim." (citation, internal quotation marks, and alterations omitted)). Thus, we affirmed the district court's decision treating the Rule 60(b) motion as a second or subsequent habeas application.

Runnels not only fails to distinguish *In re Coleman*, he also fails to mention the district court's holding on this issue; indeed, he does not devote a single word of his briefing to addressing that holding. His claim that trial counsel was ineffective for failing to present more thorough psychological testing evidence is

11

fundamentally a substantive claim. And under *Gonzalez*, a motion that seeks leave to present newly discovered evidence in support of a claim previously denied "is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be inconsistent with the statute." 545 U.S. at 531 (citation and internal quotation marks omitted); *see also In re Edwards*, 865 F.3d at 203 (explaining that a Rule 60(b) motion that attacks a federal court's previous resolution of a claim on the merits must be treated as a successive habeas application). Using Rule 60(b) to present new evidence in support of a claim already litigated impermissibly "circumvents" AEDPA's requirements: "Even assuming that reliance on a new factual predicate causes that motion to escape § 2244(b)(1)'s prohibition of claims 'presented in a prior application,' § 2244(b)(2)(B) requires a more convincing factual showing than does Rule 60(b)."[1] *Gonzalez*, 545 U.S. at 531; *see also Williams v. Kelley*, 858 F.3d 464, 471 (8th Cir. 2017) ("Although an assertion of ineffective assistance of [federal] habeas counsel may be characterized as a defect in the integrity of the habeas proceeding, it ultimately seeks to assert or reassert substantive claims with the assistance of new counsel." (quoting *Ward v. Norris*, 577 F.3d 925, 932 (8th Cir. 2009)).

The magistrate judge's report, adopted by the district court, effectively strips away the Rule 60(b) sheep's clothing to reveal the successive-habeas wolf underneath. The report explains that Runnels already presented, in his federal habeas petition, an ineffectiveness claim challenging his trial counsel's mitigation investigation, including counsel's failure to seek additional psychological

---

[1] *See* 28 U.S.C. § 2244(b)(2)(B) ("A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

testing. The district court found the claim exhausted, analyzed it on the merits, and rejected it.[2] We then declined to grant a COA on the claim. *See Runnels*, 664 F. App'x at 374–77. Runnels now presents Dr. Fabian's report in an attempt to strengthen his previously rejected argument that trial counsel's mitigation investigation was constitutionally ineffective. This is the precise course of action *Gonzalez* forbids. We will not grant Runnels what is, at bottom, a "second chance to have the merits determined favorably." *In re Edwards*, 865 F.3d at 203.

Accordingly, we conclude that it is beyond debate that Runnels's Rule 60(b) motion is a second-or-successive habeas petition. In ordinary circumstances, we would then analyze whether the petition meets the statutory requirements governing such petitions, provided the petitioner timely moved for authorization to file one. *See, e.g.*, *In re Coleman*, 768 F.3d at 373–74. But Runnels did not do so. The district court transferred the Rule 60(b) motion to this court as a second-or-successive petition, and Runnels failed to comply with this court's directive to file a motion for authorization under 28 U.S.C. § 2244(b)(3), resulting in dismissal of the authorization action. *See* Order, *In re Runnels*, No. 17-11294 (5th Cir. Dec. 5, 2017).

---

[2] It is for this reason that the *Martinez* exception is not available to Runnels. In *Martinez*, the Supreme Court "held that a petitioner may establish cause to excuse a procedural default as to an ineffective-assistance-of-trial-counsel claim by showing that (1) his state habeas counsel was constitutionally deficient in failing to include the claim in his first state habeas application; and (2) the underlying ineffective-assistance-of-trial-counsel claim is 'substantial.'" *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014) (quoting *Martinez*, 566 U.S. at 13–14). The district court found there was no procedural default on Runnels's IATC claim; thus, there is nothing that any invocation of *Martinez* could excuse. *See Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014) ("*Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted."). We have explained that we will not permit the use of *Martinez* "to bootstrap factual development in federal court in search for unexhausted claims," as "this 'approach encourages state defendants to concoct "new" IAC claims that are nothing more than fleshed-out versions of their old claims supplemented with "new" evidence.'" *Ward v. Stephens*, 777 F.3d 250, 257 n.3 (5th Cir. 2015) (citation omitted) (quoting *Dickens v. Ryan*, 740 F.3d 1302, 1328 (9th Cir. 2014) (en banc) (Callahan, J., concurring in part and dissenting in part)), *abrogated on other grounds by Ayestas*, 138 S. Ct. 1080.

No. 17-70031

\*     \*     \*

Petitioner's application for a certificate of appealability is **DENIED**.